# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Young B. Kim | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 CV 3306 | **DATE** | June 28, 2013 |
| **CASE TITLE** | Williams v. Tucker, et al. | | |

**DOCKET ENTRY TEXT**

Defendants' motion to dismiss [23], treated as a motion for summary judgment, is granted. Summary judgment is entered in favor of Defendants and against Plaintiff. Civil case terminated.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Pretrial detainee Jonathan Williams brings the current lawsuit pursuant to 42 U.S.C. § 1983 against Cook County, Cook County Sheriff Thomas Dart, and four individually named Cook County corrections officers. (R. 7.) Defendants Cook County and Thomas Dart have been dismissed, leaving only the four Cook County corrections officers as defendants (the "County Officers"). (R. 5.) Williams, who claims to suffer from a pre-existing spinal injury, alleges that on January 20, 2011, the County Officers violated his Eighth and Fourteenth Amendment rights when transferring him to a new location within the Cook County Jail. (R. 5, 7.) Before the court is the County Officers' motion to dismiss Williams's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court has converted the motion to one for summary judgment pursuant to Federal Rules of Civil Procedure 12(d) and 56. For the following reasons, the motion is granted and summary judgment is entered in favor of Defendants:

To address the issues raised in the County Officers' motion to dismiss, it is necessary first to examine another §1983 lawsuit filed by Williams back in February 2011, *see Williams v. Cook County Sheriff's Dept.*, No. 11 CV 947 ("first suit"), against various Cook County employees and departments (collectively "the County"). In that first suit, Williams alleged that the County knowingly and repeatedly failed to provide him with his HIV medication between February 2010, when he arrived at Cook County Jail, and January 2011, when he transferred from one location to another within the Cook County Jail. In October 2011 the district judge assigned to the first suit referred the case to this court for the purpose of conducting a settlement conference. (11 CV 947, R. 35.)

| | Courtroom Deputy Initials: | ma |
|---|---|---|

The parties, with this court's participation and supervision, engaged in numerous telephone conferences to discuss settlement options. (11 CV 947, R. 38-40, 47-49, 51.) During those telephone conferences, the final of which was on the record, the County stressed its desire to avoid future lawsuits stemming from Williams's stay at the Cook County Jail. Williams stressed his need to have access to the court system in the event he is deprived of his HIV medications in the future. With those concerns in mind, the parties agreed to the following terms of a settlement agreement signed by Williams on February 22, 2012, and Kevin Sims, one of the County defendants, on February 28, 2012 ("Settlement Agreement"):

> 1. The Plaintiff and Defendant [Kevin Sims] do hereby agree to settle and compromise the above-entitled action under the terms and conditions set forth herein.
>
> 2. Defendant agrees to pay Plaintiff the sum of three thousand five hundred dollars ($3,500.00).
>
> 3. The settlement amount of three thousand five hundred dollars ($3,500.00) represents the entire amount of the compromise settlement between Plaintiff and Defendant for the action styled Jonathan Williams v. Cook County, et. al., 11 CV 947 . . . .
>
> 4. Plaintiff agrees to dismiss any and all claims up to the time he signs this Agreement against Defendant, Cermak Hospital, and/or any other employees of Cermak Hospital, Thomas Dart, and/or any other employees of the Cook County Jail, relating to Plaintiff being housed at the Cook County Jail as a pretrial detainee. Plaintiff's dismissal is voluntary and the dismissal is in consideration for the settlement amount of three thousand five hundred dollars ($3500.00) paid on behalf of Defendant in this case.
>
> 5. Furthermore, should Plaintiff file another lawsuit against Defendant, Cermak Hospital, and/or any other employees of Cermak Hospital, Thomas Dart, and/or any other employees of the Cook County Jail, alleging a failure to administer medication while Plaintiff is a pretrial detainee, this settlement amount of three thousand five hundred dollars ($3500) paid on behalf of Defendant in this case shall act as a set-off amount against any amount Plaintiff may recover in a future lawsuit.

(R. 27.) Williams also agreed to a Stipulation to Dismiss with Prejudice. (11 CV 947, R. 55.) On March 26, 2012, the first suit was dismissed with prejudice. (11 CV 947, R. 56, 57).

A month later, on May 2, 2012, Williams filed the current lawsuit against the County Officers alleging once again that they had deprived him of his HIV medications during his transfer from one cell to another on January 20, 2011 (the same date that served as the ending point in the first suit) and physically injuring him during his transfer by dragging him down a flight of stairs. (R. 1.) On November 19, 2012, the County Officers moved to dismiss the complaint arguing that Williams's current lawsuit is barred by the terms of the Settlement Agreement. (R. 23.) The court required the County Officers to submit a copy of the Settlement Agreement in support of the motion to dismiss and they complied. (R. 26, 27.) Thereafter, Williams and the County Officers consented to this court's jurisdiction and Williams moved to have the Settlement Agreement barred from consideration in connection with the motion to dismiss and to have it sealed from the pubic record. (R. 27, 28, 32.) The court denied this motion and converted the motion to dismiss into one for summary judgment pursuant to Rule 12(d) insofar as the County Officers rely on and present evidence outside of the pleadings. (R. 37.) *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Williams then filed two more objections, arguing against this conversion and the authority of this court. (R. 38, 40.) This court overruled those objections. (R. 41.)

In the current motion, the County Officers argue that this lawsuit is precluded by paragraph 4 of the Settlement Agreement, which provides for the dismissal of any and all of Williams's claims "up to the time he signs this Agreement against . . . Thomas Dart and/or any other employees of the Cook County Jail, relating to Plaintiff being

housed at the Cook County Jail as a pretrial detainee." (R. 27.) They maintain that this provision bars Williams from bringing the current suit under the doctrine of accord and satisfaction or estoppel. (R. 23, Defs.' Mot. at 3-4.) Williams counters that he only agreed to dismiss claims filed before he signed the Settlement Agreement but that he made no agreement to relinquish non-pending claims or claims other than those against Kevin Sims. (R. 31, 48.) The court determines that Williams agreed to dismiss the claims raised in the current lawsuit and therefore concludes that County Officers are entitled to summary judgment.

Summary judgment is appropriate when the record establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether genuine issues of material fact exist, the court must "review the record as a whole in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). Summary judgment is precluded "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (citation omitted).

With this standard in mind, the court turns to the Settlement Agreement itself. A settlement agreement "is enforced 'just like any other contact' under the state law of contract." *Holmes v. Potter*, 552 F.3d 536, 539 (7th Cir. 2008) (quoting *Dillard v. Starcon Int'l*, 483 F.3d 502, 508 (7th Cir. 2007)); *see also Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) ("Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law."). In this case, then, Illinois law controls. *See Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). Illinois follows what is known as the "objective theory of intent." *Id.* This means that in interpreting a contract under Illinois law, "the paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement." *International Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 168 Ill.App.3d 361, 370 (1st Dist. 1988). Consequently, a party's "[s]ecret hopes and wishes count for nothing" because the "status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814-15 (7th Cir. 1987). Furthermore, "contracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement." *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010).

Where, as here, a dispute exists between the parties as to the meaning of a contract provision, the threshold issue is whether the contract is ambiguous. *See Hillenbrand v. Meyer Med. Grp., S.C.*, 288 Ill.App.3d 871, 875-76 (1st Dist. 1997). "In determining whether an ambiguity exists, the court applies the 'four corners rule' and looks to the language of the agreement alone." *Lease Mgmt. Equip. Corp. v. DFO Partnership*, 392 Ill.App.3d 678, 685 (1st Dist. 2009). Contract language is not ambiguous simply because parties disagree as to the meaning of a term. "A court will consider only reasonable interpretations of the contract language and will not strain to find an ambiguity where none exists." *Id.* at 686.

Here, the parties disagree as to the meaning of the phrase "dismiss any and all claims up to the time he signs this Agreement" in paragraph 4, particularly as to the words "dismiss" and "claims." The County Officers equate the meaning of "dismiss" with "release" or "relinquish," such that Williams agreed, in effect, to relinquish any and all claims and grievances, including potential ones, against all of the entities and individuals named in paragraph 4 up through his execution of the Settlement Agreement. Williams, on the other hand, argues that his agreement to "dismiss all claims" means only that he agreed to give up matters pending before the United States District Court at the time that he signed the Settlement Agreement, and that his present claims are preserved because they were filed with the United States District Court two months after he signed the Settlement Agreement.

As an initial matter, the court rejects Williams's contention that this lawsuit avoids the sweep of the Settlement Agreement because he did not file it until two months after that document's finalization. Williams confuses the concept of claim "accrual" with claim "commencement." A claim *accrues* (meaning it comes into legally enforceable

existence) when a plaintiff discovers that he has been injured and can identify by whom. *See United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010); *Brademas v. Indiana Housing Fin. Auth.*, 354 F.3d 681, 686 (7th Cir. 2004). On the other hand, a claim *commences* when the plaintiff files a complaint with the court. *See* Fed. R. Civ. P. 3. Williams's current claims accrued in January 2011, and thus came into legal existence when he believed himself to be injured by the County Officers. Furthermore, Williams filed a grievance raising these claims and exhausted his administrative remedies before he signed the Settlement Agreement. (R. 7 at 4-5.) The current claims therefore existed prior to the execution of the Settlement Agreement.

The court further concludes that there is no ambiguity inherent in the Settlement Agreement. While the Settlement Agreement could have been drafted more cleanly, the intention of the parties is clear from the four corners of the document. Reason controls this analysis and the most reasonable interpretation is one which favors the County Officers' position. Arguably, the use of the word "release" instead of "dismiss" in paragraph 4 may have prevented the current dispute by more clearly articulating the parties' intention to wipe the slate clean of all pre-existing claims. However, the language in paragraph 4 expresses the parties' collective understanding that Williams would relinquish as to all the entities and individuals listed in that paragraph any and all claims, up to the time he signed the Settlement Agreement, relating to his detention at the Cook County Jail. Even if the court accepted Williams's interpretation of paragraph 4 to the extent that "dismiss" cannot be interpreted as "release," the Settlement Agreement still bars the current lawsuit because his administrative grievance was pending against the County Officers. There is no reason for paragraph 4's all-encompassing language to exist if the parties' intention was merely to dismiss No. 11 CV 947 or just those lawsuits pending in the United States District Court (there were no other federal cases pending).

In sum, in exchange for $3,500 Williams relinquished his right to file a lawsuit pertaining to his time as a pretrial detainee up through February 22, 2012, against any of the entities or persons listed in paragraph 4. The currently pending lawsuit is an attempt to do precisely that which Williams agreed not to do. As the court is empowered to enforce the terms of a settlement agreement just as it would the terms of any other contract, *see Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513, 515 (7th Cir. 2003), the court finds that the Settlement Agreement bars the present suit. Accordingly, the County Officers' motion to dismiss, treated as a motion for summary judgment, is granted.